UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/13/2023
```

-----------------------------------------------------------------------X
                                         :

EMPIRE STATE BUS CORP., *et al.*,          :

                      Plaintiffs,     :

                                    :          21-cv-10471 (LJL)

       -v-                         :

                                    :       OPINION AND ORDER

LOCAL 854 HEALTH AND WELFARE FUND,   :

                                    :

                    Defendant.     :

                                    :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiffs Empire State Bus Corp., Allied Transit Corp., and Empire Charter Service, Inc.

("Plaintiffs") bring an action against Defendant Local 854 Health and Welfare Fund

("Defendant" or "Teamsters Fund") for a declaratory judgment. Dkt. No. 1-1. Prior to the close

of discovery, Plaintiffs moved for summary judgment and attorneys' fees. Dkt. Nos. 11, 12. The

remaining discovery deadlines were stayed pending the Court's resolution of the motion. Dkt.

No. 32.

      For the following reasons, summary judgment is granted in Plaintiffs' favor, although

Plaintiffs' request for attorneys' fees is denied.

## BACKGROUND

      The following facts, which are largely drawn from the parties' Local Rule 56.1

statements of facts, Dkt. Nos. 14, 15, 24, 30, are undisputed unless otherwise indicated.[1]

---

[1] Plaintiffs filed a Rule 56.1 joint statement of undisputed material facts. Dkt. No. 14 ("Joint 56.1 Statement"). Plaintiffs also submitted a Rule 56.1 statement of undisputed facts in support of their motion for summary judgment. Dkt. No. 15 ("Ps' 56.1 Statement"). Defendant submitted a response to Ps' 56.1 Statement. Dkt. No. 24 ("D's 56.1 Response"). Plaintiffs submitted a response to D's 56.1 Response. Dkt. No. 30 ("Ps' 56.1 Response").

Plaintiffs are companies that operate school buses primarily in Manhattan, Brooklyn, Queens, the Bronx, and Staten Island.  Joint 56.1 Statement ¶ 1.  Plaintiffs' unionized employees include bus drivers for general and special needs children and escorts for special needs children.  *Id.* ¶ 2.  These unionized bus drivers and escorts were, as of July 1, 2016, members of International Brotherhood of Teamsters Local 553 ("Teamsters Local 553"), a labor union.  *Id.* ¶¶ 4–5.

Plaintiffs and Teamsters Local 553 executed Collective Bargaining Agreements ("CBAs") with three-year terms, each expiring on June 30, 2019.  *Id.* ¶ 6.  The CBAs obligated Plaintiffs to contribute to the Teamsters Fund on behalf of their employees who were members of Teamsters Local 553.  *Id.* ¶ 12.  The Teamsters Fund is a multiemployer welfare plan, which provides health coverage to union members who participate in the plan, including members of Teamsters Local 553 who were employed by Plaintiffs.  *Id.* ¶¶ 15–16.  The CBAs incorporated by reference the Teamsters Fund's Agreement and Declaration of Trust (the "Trust Agreement").  *Id.* ¶ 14.

On June 30, 2019, the CBAs expired by their terms and no written extensions of the CBAs were executed after November 15, 2019.  *Id.* ¶¶ 23–24.  Although Plaintiffs and Teamsters Local 553 engaged in negotiations for new CBAs, formal negotiations between the parties stopped after January 2020.  D's 56.1 Response ¶¶ 30–31.

During the relevant time period, the Teamsters Fund had six trustees: three trustees who were appointed by Teamsters Local 553 (the "Union Trustees") and three trustees who were appointed by and/or to represent contributing employers to the Teamsters Fund (the "Employer Trustees").  Ps' 56.1 Statement ¶¶ 17–19; D's 56.1 Response ¶¶ 17–19.  On March 25, 2020, the three Union Trustees attended a Board of Trustees' meeting.  D's 56.1 Response ¶ 2; Ps' 56.1

Response ¶ 2.  At that meeting, Demos P. Demopoulos, one of the Union Trustees, made a motion to amend the Trust Agreement to provide for a termination premium for former contributing employers (the "Proposed Amendment").  D's 56.1 Response ¶ 3; Ps' 56.1 Response ¶ 3.  Plaintiffs state that the Proposed Amendment "would have required all withdrawing employers to pay out-of-pocket for any medical expenses that were incurred while the employer was contributing to the fund, but not presented to the fund for payment until after the employer stopped contributing to the fund"; these expenses are termed "Incurred But Not Reported" claims ("IBNR").  Dkt. No. 16 at 3–4.  The Union Trustees voted in favor of the Proposed Amendment at the meeting, pending ratification by the full Board of Trustees.  D's 56.1 Response ¶ 4; Ps' 56.1 Response ¶ 4.  The motion containing the Proposed Amendment was circulated to the Employer Trustees in writing via email by Demopoulos on March 25, 2020. D's 56.1 Response ¶ 5; Ps' 56.1 Response ¶ 5.

On March 31, 2020, a special meeting of the Board of Trustees of the Teamsters Fund was held by video conference; all three Union Trustees and all three Employer Trustees attended the meeting.  Joint 56.1 Statement ¶ 58; D's 56.1 Response ¶ 6; Ps' 56.1 Response ¶ 6; Dkt. No. 13-2.  Unsigned minutes from that meeting state that the Union Trustees of the Teamsters Fund reintroduced the Proposed Amendment.  Joint 56.1 Statement ¶ 54.  According to the unsigned minutes, a termination premium would be assessed in an amount equal to the IBNR claims attributable to each employer's employees and their dependents.  *Id.* ¶ 55.  The motion for the Proposed Amendment did not pass and was not adopted at that meeting.  *Id.* ¶ 56.  The unsigned meeting minutes state:

> Fund Counsel Friedman asked whether the Employer Trustees were going to vote on the motion and reported that the Union Trustees were all going to vote in favor. Mr. Pollack stated that he would notify Mr. Friedman and the Union Trustees of the Employer Trustees' vote by the close of business tomorrow.

Dkt. No. 13-12 at 5.  On April 1, 2020, as promised, Jeffrey Pollack—who Defendant claims is Employer Trustee Liaison Counsel—sent an email to all the trustees apparently with the votes of the three Employer Trustees: "Welfare Motion 2 re IBNR assessment.  Curcio and Barrett vote yes (based on Vicki's statement that the IBNR is usually 2x one month's welfare contribution).  Cassesse did not participate or vote."  Dkt. No. 13-19; *see* D's 56.1 Response ¶ 10; Ps' 56.1 Response ¶ 10 (noting that while they do not challenge "the veracity of the email," they dispute "Pollack's recitation of employer trustee votes on the grounds that no valid vote occurred or could occur via that email" and they have "no personal knowledge of Pollack's title with the Teamsters Fund").  John Curcio, one of the Employer Trustees mentioned in the April 1 email, is the principal of both Empire State Bus Corp. and Empire Charter Service, Inc., and has a management role with Allied Transit Corp.  D's 56.1 Response ¶ 11; Ps' 56.1 Response ¶ 11.

On September 14, 2020, Plaintiffs' employees voted to leave the Teamsters Local 553 and to join the union known as Amalgamated Transit Workers Local 854.  Joint 56.1 Statement ¶ 34.  On November 12, 2020, the Teamsters Fund sent a letter to Plaintiffs demanding that the Bus Companies pay the Teamsters Fund a termination premium of $239,892 ("Termination Premium").  *Id.* ¶ 71; D's 56.1 Response ¶ 70.  After Plaintiffs refused to pay, the Teamsters Fund sent Plaintiffs a letter on November 3, 2021 declaring Plaintiffs to be in "default" and demanding payment in full within seven days.  Joint 56.1 Statement ¶ 88.  In that letter, the Teamsters Fund stated: "If Allied/Empire fails to remit the Termination Premium within this time period, the Fund shall take all required steps to collect the monies due, including, but not limited to authorizing Blitman & King to file suit . . . ."  Dkt. No. 13-18.

### PROCEDURAL HISTORY

On or about November 14, 2021, Plaintiffs commenced this action in the Supreme Court of New York County.  Dkt. No. 1 ¶ 1.  The complaint requested a declaratory judgment that the

Proposed Amendment was never validly voted on and adopted and Plaintiffs were therefore not liable for the Termination Premium.  Dkt. No. 1-1.  Defendant removed the action to this Court on December 7, 2021 pursuant to 28 U.S.C. §§ 1441 and 1446.  *See* Dkt. No. 1.

On March 25, 2022, prior to the close of discovery, Plaintiffs filed a motion for summary judgment on all causes of action in the complaint along with supporting documentation.  Dkt. Nos. 11, 12–16.  Defendant submitted their memorandum of law in opposition to the motion along with supporting documentation on April 22, 2022.  Dkt. Nos. 23–26.  Plaintiffs submitted a reply memorandum of law and supporting documentation on May 9, 2022.  Dkt. Nos. 27–30.

On June 23, 2022, the parties requested a stay of discovery deadlines pending a decision on the motion for summary judgment.  Dkt. No. 32.  The Court granted that request the next day.  Dkt. No. 33.

On November 10, 2022, Plaintiffs filed a notice of supplemental authority in support of their motion for summary judgment.  Dkt. No. 34.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact

exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must also demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).[2]

---

[2] The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[ ] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R.

## DISCUSSION

## I.    Declaratory Judgment

Plaintiffs move for summary judgment arguing that the Trust Agreement was never

properly amended to include the Proposed Amendment and thus Plaintiffs are not liable for the

Termination Premium assessed against them.  Dkt. No. 16 at 6.  Among other arguments,

Plaintiffs contend that Defendant has not produced evidence that a valid vote by the Board of

Trustees was ever taken in favor of the Proposed Amendment.  *Id.* at 9–10.  Plaintiffs note that

the April 1, 2020 email detailing the votes of the Employer Trustees did not constitute a valid

vote to amend the Trust Agreement as it did not comply with the procedural requirements laid

out in that agreement.  *Id.*  Further, Plaintiffs argue that the Teamsters Fund may not impose a

termination premium on an employer whose CBA has expired.  Dkt. No. 16 at 23–24.  Plaintiffs

state that Defendant does not dispute that Plaintiffs' CBAs expired in November 2019, several

months before Defendant claims to have amended the Trust Agreement in March/April of 2020.

*Id.*

In response, Defendant argues that the Proposed Amendment was validly adopted.  Dkt.

No. 23 at 6–7.  Defendant states that the motion for the Proposed Amendment—which had

already received the votes of the three Union Trustees—was presented via teleconference at a

March 31 meeting at which all of the trustees were present.  Dkt. No. 23 at 6.  Defendant states

that the Union Trustees voted for the motion and the Employer Trustees stated that they would

get back to the Union Trustees with their vote via an email from Employer Trustee Liaison

---

56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to
evidence which would be admissible."  L.R. 56.1(d).  "Each numbered paragraph in the
statement of material facts set forth in the statement required to be served by the moving party
will be deemed to be admitted for purposes of the motion unless specifically controverted by a
correspondingly numbered paragraph in the statement required to be served by the opposing
party."  L.R. 56.1(c).

Counsel Pollack and did so the next day.  *Id.* at 7.  Defendant also notes that the text of the Proposed Amendment is memorialized in the meeting minutes and that there is no requirement that the amendment be memorialized in a particular form or be executed.  *Id.* at 7, 9.

Judge Schofield in this District has addressed the question posed here—*i.e.*, whether the Trust Agreement was validly amended to add the Proposed Amendment.  *See Careful Bus Serv., Inc. v. Loc. 854 Health & Welfare Fund*, 2022 WL 16856270 (S.D.N.Y. Nov. 10, 2022).  In that case, the plaintiff, a different contributing employer to the Teamsters Fund, sought a declaratory judgment that it did not owe a termination premium to the Fund.  *Id.* at *1.  The district court granted summary judgment in favor of the plaintiff finding that the "Trust [Agreement] was not validly amended to add the Termination Premium."  *Id.* at *3.  The district court stated that the Trust Agreement sets forth the procedure for amendment, writing that it may be amended "by a majority of all Trustees voting in person or by proxy at a meeting of which there is a quorum present."  *Id.* at *4.  And, the district court stated that it is "undisputed" that "purported amendment to impose the Termination Premium was not adopted 'by a majority of all Trustees voting in person or by proxy at a meeting of which there is a quorum present' as required by the Trust [Agreement]" as the Employer Trustees did not vote at the meeting and were not "present" when they did vote.  *Id.*  The district court concluded that "[t]he purported Termination Premium amendment also is not incorporated by reference in the CBA along with the Trust [Agreement] itself, because it is not 'described in the contract such that it is identifiable beyond all reasonable doubt.'"  *Id.* (quoting *Eshaghpour v. Zepsa Indus., Inc.*, 101 N.Y.S.3d 836, 837 (1st Dep't 2019)).

This Court agrees with Judge Schofield's well-reasoned analysis and reaches the same conclusion in the matter at hand.[3]  This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"),[4] which provides that an employer shall make contributions to a multiemployer plan "in accordance with the terms and condition of such plan" or a collectively bargained agreement.  29 U.S.C. § 1145.  Plaintiffs essentially seek a declaratory judgment that

---

[3] Plaintiffs alerted the Court to this opinion by filing a letter notice of supplemental authority on November 10, 2022.  Dkt. No. 34.  Defendant did not respond to Plaintiffs' letter.

[4] In its opening motion, Plaintiffs seem to contest federal jurisdiction, arguing that they maintain that this is not an ERISA action but instead a simple contract case.  Dkt. No. 16 at 25 ("Plaintiffs have denied that this is an ERISA action, arguing that it is a simple contract case.").  Plaintiffs were given until February 25, 2022 to file a motion to remand to state court and never did so, Dkt. No. 11, and, in its reply brief in support of summary judgment, Plaintiffs appear to concede that there is federal jurisdiction over this action.  Plaintiffs notes that "[t]o obtain federal jurisdiction, the Fund successfully argued that this declaratory judgment action is the mirror image of a suit by a fiduciary to collect unpaid contributions."  Dkt. No. 28 at 15 (citing Document No. 14).  Plaintiffs' claim that the Fund "successfully argued . . ." appears to be a reference to Judge Schofield's case in which she concluded that jurisdiction existed under ERISA §§ 502(a)(3) and 515 as well as under LMRA § 301. *See* ECF Nos. 3–15, *Careful Bus Serv. et al. v. Local 854 Health and Welfare Fund*, 1:21- cv-10472 (Feb. 17, 2022). This Court, however, has an independent obligation to ensure that it has subject matter jurisdiction over the action.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  "A federal court has original jurisdiction over an action seeking declaratory relief where the declaratory judgment defendant's 'threatened action' or the suit actually filed by the declaratory judgment defendant present a federal question."  *New York by James v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 135 (S.D.N.Y. 2021) (quoting *W. 14th St. Com. Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir. 1987)).  To determine whether the declaratory judgment defendant's threatened action presents a federal question, "[c]ourts evaluate whether subject matter jurisdiction exists over suits for declaratory relief by rearranging the parties into 'the hypothetical "mirror image" coercive suit.'"  *Id.* (quoting *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012)).  In this case, Defendant's threatened suit would have arisen under ERISA §§ 502(a)(3) and 515.  Defendant threatened that if Plaintiffs failed to pay the Termination Premium, it "shall take all required steps to collect the monies due including . . . fil[ing] suit."  Dkt. No. 13-18.  Under ERISA §§ 502(a)(3) and 515, "fiduciaries of an employee benefit plan" may "bring suit [against an employer] to compel the payment of delinquent fund contributions."  *32BJ N. Pension Fund*, 935 F.3d at 98; *see* 29 U.S.C. § 1132(a)(3); *id.* § 1145.  Thus, because Defendant's threatened suit would arise under federal law (specifically, ERISA), this Court has federal question jurisdiction over Plaintiffs' suit for declaratory relief.

the terms and condition of the Trust Agreement do not obligate them to pay the Termination

Premium under 29 U.S.C. § 1145 .

    "[A]n employer in an ERISA action for unpaid contributions is bound to the terms of an

ERISA plan document (here, a Trust [Declaration]) only if the employer objectively manifests an

intent to be so bound, as evaluated under ordinary principles of contract interpretation." *32BJ N.*

*Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 95 (2d Cir. 2019).  One such principle

is "the well-established doctrine of incorporation by reference." *Id.* at 99.  In this case, the

parties do not dispute that they entered into CBAs, which incorporated by reference the Trust

Agreement.  Joint 56.1 Statement ¶¶ 6, 14.  The CBAs state that the employers agree to "be

bound by the terms, obligations and conditions of the said Trust Agreement, as amended and as

may hereafter be amended."  Dkt. No. 13-3 § 12(8); Dkt. No. 13-4 § 12(8).  The parties also do

not dispute that the Trust Agreement set forth procedures by which it could be amended.  Article

XIII, Section 1 of the Agreement states:

> The provisions of this Agreement and of the Plan may be amended at any time, and
> from time to time by a majority of all Trustees voting in person or by proxy at a
> meeting of which there is a quorum present, subject to the collective bargaining
> agreements, and applicable law, ruling or regulation.  Any amendment to this
> Agreement shall be provided to the Union and the Employers.

Dkt. No. 13-7, art. XIII, § 1.  The Trust Agreement also states that "a quorum of the Board of

Trustees shall consist of at least one (1) Employer Trustee and one (1) Union Trustee appearing

in person," each trustee shall have one vote, and, except as otherwise provided, "all matters shall

be determined by a majority vote of all of the Trustees voting in person or by proxy at a meeting

at which there is a quorum present; provided however, such a majority must result from an equal

number of Employer and Union Trustees voting."  *Id.* art. IV, §§ 3, 4.

    There is also no real dispute that the provisions of Article XIII, Section 1 of the Trust

Agreement were not complied with.  In arguing that a valid vote to amend the Trust Agreement

took place, Defendant do not claim that *at a meeting* a majority of all trustees voted either in person or by proxy in favor of the amendment.  To the contrary, Defendant claims that while three of the six trustees, *i.e.*, the Union Trustees, voted in favor of the Proposed Amendment at the March 31, 2020 meeting, the remaining three employees, *i.e.*, the Employer Trustees, did not vote on the Proposed Amendment at that meeting.  Dkt. No. 25 ¶ 10.  Although all of the trustees were present, the votes of the Employer Trustees were not cast and communicated until the next day when Pollack informed the trustees, by email, that "two of the three Employer Trustees voted for the motion" and the third did not vote or participate.  *Id.*  Therefore, even according to Defendant, a majority vote of the trustees was never cast in favor of the Proposed Amendment "at a meeting" at which there was "a quorum present."  Dkt. No. 13-7, art. XIII, § 1.

That the vote on the Proposed Amendment did not follow the amendment procedures specified in the Trust Agreement is fatal to Defendant's claim that the Proposed Amendment was validly adopted.  ERISA requires "that every employee benefit plan 'provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan.'" 29 U.S.C. § 1102(b)(3).  While ERISA does not mandate a particular level of detail or the necessary procedural requirements, it requires that there "*be* an amendment procedure."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80 (1995) (emphasis in original).  And, the Supreme Court has "interpreted this provision as creating the obligation not only to have a procedure for amending a plan in place, *but also to comply with that procedure when amending a plan*."  *Massaro v. Palladino*, 19 F.4th 197, 215 (2d Cir. 2021) (emphasis added) (citing *Curtiss-Wright Corp.*, 514 U.S. at 75); *see also Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515–16 (1997) ("An employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in

the plan."). Accordingly, courts routinely hold that amendments to a plan not made in compliance with the procedure outlined in a plan are invalid. *See, e.g.*, *Palladino*, 19 F.4th at 211 (holding that that amendments to ERISA benefit plans were "invalid under the terms of the Trust Agreements" because they were passed by a "bare '4-2' vote of the existing Trustees" and the Trust Agreement required a "unanimous vote" to pass the amendments."); *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1293 (D.C. Cir. 2010) ("[A] proposed amendment not done in accordance with a plan's amendment procedure is ineffective and does not amend a plan." (citation omitted)); *Depenbrock v. Cigna Corp.*, 389 F.3d 78, 82 (3d Cir. 2004) ("[A]n amendment is ineffective if it is inconsistent with the governing instruments."); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) ("Section 402 of ERISA requires employee benefit plans to specify both an amendment procedure and a procedure for identifying persons with authority to amend. These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means." (internal citation omitted)).

Defendant nonetheless appears to argue that strict compliance with the procedures laid out in the Trust Agreement for amendment should be excused because the vote took place "in the frightening early days of a pandemic." Dkt. No. 23 at 7. But it is unclear why the pandemic prevented full compliance with the amendment procedures laid out in the Agreement. Plaintiffs do not dispute that a valid vote of a majority of trustees to amend the Agreement could have taken place at a "meeting[] held by teleconference," Dkt. No. 28 at 5; the meeting here was held by teleconference. Instead, Plaintiffs claim that no valid vote took place because a majority of trustees never voted in favor of the Proposed Amendment at "a meeting," *telephonic or otherwise*. The Court thus rejects Defendant's argument.

Defendant also seems to argue that the Proposed Amendment should be deemed valid because "[t]here was no doubt among the Trustees that the Amendment was validly adopted." Dkt. No. 23 at 5.  In support of this argument, Defendant notes that the Union Trustees initiated arbitration with the Employer Trustees over the appropriate interpretation of the Proposed Amendment and there "was no dispute among the trustees over its valid adoption" at the arbitration proceeding.[5]  *Id.*  Defendant also points out that Plaintiffs' principal, John Curcio, "was one of the Employer Trustees who voted in favor of the Termination Premium Amendment."  *Id.* at 5.  However, this "position takes a far too casual view of ERISA's statutory requirements for amendment."  *Winterrowd*, 321 F.3d at 937.  The Supreme Court has stated that the purposes of requiring benefit plans to set forth, and abide by, definite procedures for amendment are, *inter alia*, to "increase[] the likelihood that proposed plan amendments, which are fairly serious events, are recognized as such and given the special consideration they deserve" and to "enable[] plan administrators, the people who manage the plan on a day-to-day level, to have a mechanism for sorting out . . . the bona fide amendments from those that are not."  *Curtiss-Wright Corp.*, 514 U.S. at 82.  If this Court were to accept Defendants' view and adopt a rule that would excuse the trustees' failure to comply with proper amendment procedures, this statutory provision and its intended purposes would be undermined.  Employee benefit plans would be statutorily required to adopt and follow amendment procedures, but such procedures could be neglected without effect as long as all plan trustees collectively failed to recognize or honor the significance of such procedures.  Plan administrators would also have no clear way of sorting out bona fide amendments from those that are not.  Requirements that votes

---

[5] Defendant does not claim in its briefing that the arbitrator's decision has any precedential or collateral estoppel effect on the instant motion.

all take place at a single time at a single place or at a single meeting are not pointless technicalities: among other things, they "avoid ambiguity and misinterpretation" in discerning what shareholder action was approved, ensure that the "requisite level of approval was obtained," and "promote transparency." *Espinoza v. Zuckerberg*, 124 A.3d 47, 64 (Del. Ch. 2015) (discussing the importance of compliance with formalities of voting procedures).

In addition, to find that the Proposed Amendment was binding on Plaintiffs would be contrary to the principle that in order for a document to be "incorporated by reference as part of an executed agreement," the "referenced material must be described in the contract such that it is identifiable beyond all reasonable doubt." *Eshaghpour*, 101 N.Y.S.3d at 837; *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("[A] party will not be bound to the terms of any document unless it is clearly identified in the agreement."); *In re Bd. of Comm'rs of Washington Park*, 52 N.Y. 131, 134 (1873). "[I]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 341 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 84 (2d Cir. 2020) (citation omitted). Here, Plaintiffs' CBAs make specific reference to the "Trust Agreement, as amended and as may hereafter be amended." Dkt. No. 13-3 § 12(8); Dkt. No. 13-4 § 12(8). The CBAs thus have "identified beyond all reasonable doubt" not only the Trust Agreement itself, but all amendments validly enacted pursuant to the Trust Agreement's terms. *Eshaghpour*, 101 N.Y.S.3d at 837. It does not, however, follow that an amendment enacted without regard for the Trust Agreement's amendment procedures was identified beyond all reasonable doubt in the CBAs. To the contrary, an amendment made in violation of the express terms of the Trust Agreement would seem precisely not to be "clearly identified in the agreement," *PaineWebber Inc.*, 81 F.3d at

1201, nor could it be said that "the parties to the [CBAs] had knowledge of and assented to" such amended terms, *id.*

In addition, even if the Proposed Amendment was validly adopted, Plaintiff would still be entitled to summary judgment in its favor. The parties agree that Plaintiffs are subject to the Trust Agreement because it was incorporated by reference in the CBAs. Joint 56.1 Statement ¶¶ 13–14. But, the undisputed evidence also shows that Plaintiffs' CBAs expired in November 2019, several months before Defendant claims that the Teamsters Fund amended its Trust Agreement in March/April 2020. Joint 56.1 Statement ¶¶ 23–28. And, the Supreme Court has held that "an expired collective-bargaining agreement is no longer a legally enforceable document." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991) (cleaned up); *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988) ("Deference to the collective bargaining process also requires us to respect the expiration date chosen by the parties.").[6] It follows—as Plaintiffs argue—that even assuming the Proposed Amendment had been adopted pursuant to the amendment procedures laid out in the Trust Agreement, Plaintiffs were not bound by the amendment provisions of the Trust Agreement and thus no legally enforceable document bound Plaintiffs to the Proposed Amendment at that time.

Defendant nonetheless argues that Plaintiffs were "still bound by the Trust Agreement in March/April 2020" as they were "still contributing to the Fund until June 2020." Dkt. No. 23 at

---

[6] These cases do note that even after the expiration date of a CBA, the terms of an expired agreement retain some legal significance due to the "duty not to effect unilateral changes in most terms and conditions of employment, derived from the statutory command to bargain in good faith." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc.*, 501 U.S. at 203; *Derrico*, 844 F.2d at 26 . However, they also make clear that even though the pre-expired terms of the CBA as to the employer-employee relationship may statutorily have some legal effect post-expiration, the CBA itself no longer remains binding on the parties. As the Second Circuit stated, the "[r]ights and duties under a collective bargaining agreement do not otherwise survive the contract's termination at an agreed expiration date." *Derrico*, 844 F.2d at 26–27.

13–14.  The Second Circuit addressed a similar argument in *32BJ North Pension Fund v. Nutrition Management Services Co.*, 935 F.3d 93 (2d Cir. 2019).  In that case, the court considered whether an employer was bound to the interest rate established by an ERISA plan document where the CBA that the employer "signed only *referred* to the plan document but the employer did not expressly agree to be bound by that document."  *Id.* at 95.  Defendant, who was in the business of providing food services to nursing homes, had entered into a CBA with a union in which it agreed to contribute to a pension fund (the plaintiff in the action) a fixed sum for all employees in the bargaining unit who met certain conditions.  *Id.* at 96.  The CBA also stated that the "parties understand that the . . . Fund will be held and managed under the terms and provisions of [the Trust Agreement] to be executed in connection with the said Fund."  *Id.* (citation omitted).  The underlying Trust Agreement included a provision that stated that if an employer did not pay contributions at the time they were due, the employer would be liable for interest on the unpaid contributions at a rate set by the trustees.  *Id.*

Defendant failed to make its required contributions to the fund, plaintiff sued, and the district court held that defendant was liable both for unpaid contributions as well as interest that had accrued on the unpaid contributions.  *Id.*  Defendant sought reconsideration of its liability for interest payments and appealed.  *Id.*

The Second Circuit reversed.  The court held that the fund was not entitled to unilaterally impose on the employer a plan-based interest rate for unpaid contributions  The Circuit stated that "an employer in an ERISA action for unpaid contributions is bound to the terms of an ERISA plan document (here, a Trust Agreement) only if the employer objectively manifests an intent to be so bound, as evaluated under ordinary principles of contract interpretation."  *Id.* at 95.  The court noted that applying the well-established doctrine of incorporation by reference,

16

defendant had not objectively manifested its intent to be bound by the ERISA plan document in the CBA and that merely agreeing to pay contributions to the fund did not justify holding the defendant to provisions it had not joined. *Id.* at 99. The court also rejected "the Fund's alternative argument that applying ERISA-plan-based interest provisions is so fundamental to the functioning of a fund that its trustees may unilaterally impose such provisions on a delinquent employer." *Id.* at 95. In doing so, the court noted that other circuits had identified a "limited exception to the general rule that employers must agree to be bound to an ERISA plan document": according to that exception, a non-consenting employer could be subject to a plan provision concerning the right of the trustees to audit the employer's records. *Id.* at 102. The court, however, found this exception did not apply to the facts at hand as unilaterally imposing an interest rate on an employer was not as essential to the management of the funds as the right to audit and raised far greater concerns of fairness. *Id.*

This case forecloses Defendant's argument that Plaintiffs, despite the expiration of the CBAs, remained bound by a Proposed Amendment to the Trust Agreement due to Plaintiffs' continued contributions to the Teamsters Fund. The Second Circuit's decision in *32BJ North Pension Fund* broadly stands for the proposition that contributing to a fund does not, on its own, subject an employee to whatever payment terms are contained within the plan document. Instead, the contributing employer must have actually agreed to be bound by those terms, applying ordinary principles of contract law. *Id.* at 95. In the present matter, while Plaintiffs do not dispute that they agreed to be bound by the Trust Agreement and its amendments adopted during the term of the CBAs, the undisputed evidence is that those CBAs expired in November 2019, several months before Defendant claims that the Teamsters Fund amended its Trust Agreement in March/April 2020. Joint 56.1 Statement ¶¶ 23–28. In other words, at the time of

the vote on the Proposed Amendment, Plaintiffs were no longer bound by the terms of the CBAs and the documents incorporated by reference therein, including the provision permitting the Trust Agreement to be amended.  Thus, even if the Proposed Amendment had been validly adopted, Plaintiffs could not be bound by it.

The "limited exception to the general rule that employers must agree to be bound to an ERISA plan document" also does not apply.  *32BJ N. Pension Fund*, 935 F.3d at 102.  A Termination Premium is much more similar in kind to a "plan-based interest provision[]" or a "liquidated damages provision," which the Second Circuit stated was not subject to the limited exception, than it is to "the right to audit."  *Id.* (finding "[p]lan-based interest provisions that depart from the default amounts provided by ERISA are more similar to a liquidated damages provision than the right to audit an employer's records" and thus not subject to the limited exception).  Like an interest rate provision or a liquidated damages provision, the Proposed Amendment requires the contributing employer to pay money to the fund and thus would raise significant fairness concerns if applied against a non-consenting employer.  *Id.*

For these reasons, the Court concludes that, as a matter of law, the Trust Agreement was never properly amended to include the Proposed Amendment and, even if it were, Plaintiffs would not be bound by that amendment.  Consequently, Plaintiffs are not liable for the Termination Premium assessed against it.  Because Plaintiffs are thus entitled to summary judgment in their favor on these bases, the Court does not address Plaintiffs' alternative arguments including that the Proposed Amendment is prohibited by the Labor Management Relations Act and is invalid under both the Trust Agreement and the CBAs.  Dkt. No. 16 at 14–23.

## II.      Attorneys' Fees

Plaintiffs also contend that the Court should exercise its discretion under 29 U.S.C.

§ 1132(g)(1) to order the Defendant to pay Plaintiffs' attorneys' fees.  Dkt. No. 16 at 25.

Plaintiffs contend that attorneys' fees are warranted to compensate Plaintiffs "for their expense

in having to defend against such a frivolous and baseless assessment, and to discourage this and

other funds from acting in a similarly irresponsible manner in [the] future."  *Id.*  In response,

Defendant notes that Plaintiffs are not entitled to attorneys' fees under 29 U.S.C. § 1132(g)(1)

because this provision does not apply to employers such as Plaintiffs.[7]  Dkt. No. 23 at 23.

Section 1132(g)(1) of Title 29 provides that "[i]n any action under this subchapter (other

than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in

its discretion may allow a reasonable attorney's fee and costs of action to either party."

29 U.S.C. § 1132(g)(1).  By its plain language, § 1132(g)(1) only applies to suits brought "by a

participant, beneficiary, or fiduciary."  Employers, who brought the present lawsuit, are not

participants, beneficiaries, or fiduciaries under ERISA.  *See* 29 U.S.C. § 1002(5), (7), (8); *Tuvia

Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Emps., a Div. of RWDSU, AFL-

CIO*, 717 F.2d 726, 729–30 (2d Cir. 1983) (holding that an employer is not a participant,

beneficiary, or fiduciary under ERISA).  Accordingly, the employer-Plaintiffs in this action are

not entitled to attorneys' fees under the plain language of § 1132(g)(1).

Plaintiffs nonetheless argue that the Court should disregard the plain language of

§ 1132(g)(1).  They contend that because this Court's jurisdiction is based on the "mirror image"

rule—which assumes that the Defendant was the one who initially brought the lawsuit for

purposes of determining whether a declaratory judgment raises a federal question, *see supra*

---

[7] Defendant moves for attorneys' fees and costs if it prevails.  Dkt. No. 23 at 22.  Because
Defendant did not prevail, the Court need not address this request.

n.4—Plaintiffs should be able to obtain an award of attorneys' fees to the same extent that they could have had the original action been brought by the Defendant.

There is some force to this argument. Had Defendant initiated the present suit and Plaintiffs merely prevailed through successfully asserting a defense, Plaintiffs seemingly could be entitled to attorneys' fees under § 1132(g)(1). 29 U.S.C. § 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action *to either party*." (emphasis added). Moreover, the "mirror image" rule—on which federal subject matter jurisdiction in this case is based—is premised on the idea that the "realistic position of the parties" in suits for declaratory relief such as this one is "reversed." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). While the party bringing the suit for declaratory judgment may technically be the first to file and so is termed the plaintiff, the plaintiff "seeks in essence to assert a defense to an impending or threatened" action and thus is more naturally deemed the defendant. *See id.*

Yet, despite its intuitive appeal, this Court rejects this argument. The general rule in the United States and in federal court is that litigants pay their own fees and costs. As the Supreme Court has noted: "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010) (cleaned up). 29 U.S.C. § 1132(g)(1) carves out a limited exception to that general rule. As noted, § 1132(g)(1) only applies, by its plain language, to suits "by a participant, beneficiary, or fiduciary"; it does not include suits by employers. And it would be inconsistent with the American Rule for the Court to carve out a separate and additional exception. Moreover, "when the statute language is plain, the sole function of the courts—at

least where the disposition required by the text is not absurd—is to enforce it according to its

terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)

(citation omitted).  The ostensible purpose of the law is to encourage participants, beneficiaries,

or fiduciaries who believe that their rights under ERISA have been compromised to bring suit, *cf.*

*Donachie v. Liberty Life Assur. Co. of Bos.*, 745 F.3d 41, 45–46 (2d Cir. 2014) ("It is well-

established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to

enforce their statutory rights.'" (quoting *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47

(2d Cir. 2009))); it is not to reward an employer who files suit merely to settle his obligations.

Furthermore, the exclusion of employers also does not appear to be a mere oversight:

earlier in § 1132, ERISA expressly authorizes employers to bring certain types of lawsuits under

ERISA.  *See* 29 U.S.C. § 1132(a)(10)–(11).  For example, 29 U.S.C. § 1132(a)(11) provides that

an "employer that has an obligation to contribute to the plan" may bring a civil action to enjoin a

plan administrator who fails to provide certain documents and information to contributing

employers.  *Id.* § 1132(a)(11); *id.* § 1021(k).  Yet, despite expressly providing for certain causes

of action by an employer, ERISA does not mention actions by employers in its attorneys' fee

provisions.  It thus appears plain that while Congress sought to encourage participants,

fiduciaries, and beneficiaries to enforce their rights, it had no similar solicitude for employers,

who presumably could bear their own costs.

The mirror image rule is also a narrow rule that concerns whether a lawsuit raises a

federal question.  It reflects an extension of the general principle that the nature of a defense

(whether it arises under federal or state law) is irrelevant to the issue of federal jurisdiction, *see*

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 626 (S.D.N.Y.

2013), *aff'd*, 586 F. App'x 604 (2d Cir. 2014); *Franchise Tax Bd. of State of Cal. v. Constr.*

*Laborers Vacation Tr. for S. California*, 463 U.S. 1, 16 n.14 (1983) ("[I]t is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction." (quoting *Wycoff Co.*, 344 U.S. at 248)), and thereby ensures that the federal jurisdiction of a case does not turn on the labels given to the two parties but rather on the substance of the dispute.  The mirror image rule, however, does not stand more generally for the proposition that the roles of the two parties in a declaratory judgment action (as plaintiff and as defendant) should be disregarded for all purposes or that a law providing for the award of attorneys' fees in suits brought "by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(g)(1), should be deemed to apply also to suits brought against such parties.  Nor do Plaintiffs cite any case law standing for this proposition or applying the mirror image rule in any such a manner.

Finally, awarding attorneys' fees in this action to Plaintiffs would not further the "central purpose of ERISA [] to protect beneficiaries of employee benefit plans."  *Slupinski*, 554 F.3d at 47.  Plaintiffs, in this case, seek to protect their own interests as corporations by ensuring that they do not pay more into the Teamsters Fund than is due.  They do not seek to vindicate employee benefit rights.  *See id.* ("'ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating' employee benefits rights." (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987))).  Thus, the purposes of ERISA would not be furthered by interpreting the attorneys' fees provision to encompass Plaintiffs' claim.  This Court therefore concludes that Plaintiffs are not entitled to attorneys' fees under 29 U.S.C. § 1132(g)(1) and denies the request.

## CONCLUSION

The motion is GRANTED IN PART AND DENIED IN PART.  Summary judgment is GRANTED in favor of Plaintiffs and Plaintiffs' request for attorneys' fees is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: February 13, 2023
      New York, New York
                                          LEWIS J. LIMAN
                                  United States District Judge